**Opinion issued February 26, 2013**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-11-01062-CV

—————————————

**TOBY SHOR AND SEASHORE INVESTMENTS MANAGEMENT TRUST BY AND THROUGH TOBY SHOR, TRUSTEE, Appellants**

**V.**

**PELICAN OIL & GAS MANAGEMENT, LLC, PELICAN OIL & GAS, LP, SGW INTERESTS, LLC, BNP OPERATING, LLC, AND JAMES BLACK, AS TRUSTEE OF THE PAUL PATRICK BLACK HERITAGE TRUST,**
**Appellees**

---

**On Appeal from the 12th District Court**
**Grimes County, Texas**
**Trial Court Case No. 32190**

---

# O P I N I O N

In this interlocutory appeal, appellants, Toby Shor and Seashore Investments

Management Trust, by and through Toby Shor, trustee (collectively, "Shor"),

sought execution on a prior judgment awarded in their favor from the assets of appellees, Pelican Oil & Gas Management, LLC, Pelican Oil & Gas, LP, SGW Interests, LLC, BNP Operating, LLC, and James Black as Trustee of the Paul Patrick Black Heritage Trust (collectively, "the applicants" or "Pelican"). Pelican moved for a temporary injunction to prevent further execution attempts by Shor pending resolution of the issues in the underlying declaratory judgment action, and the trial court granted the requested injunctive relief. In two issues, Shor contends that (1) the trial court lacked subject matter jurisdiction over the case and (2) if the trial court had jurisdiction, it abused its discretion in granting the temporary injunction.

We affirm the temporary injunction order.

## Background

Shor originally sued Paul Black, individually, and several entities owned, in whole or in part, by Black—PBF Investments, Ltd., BNP Holdings, Ltd., BNP Oil & Gas Properties, Ltd., BNP Commercial Properties, Ltd., Pagenergy Company, L.L.C., TSE Equities I, L.L.C., TSE Equities Company, Ltd., BNP Management, L.L.C., 500 Water Street Property, L.L.C., and 500 N. Water Street Property I, L.L.C.—for breach of contract, breach of fiduciary duties, conversion, fraud, fraudulent inducement, and conspiracy to defraud in the County Court at Law Number 3 of Nueces County ("the Nueces County suit"). On August 17, 2010, an

2

arbitration panel found in favor of Shor on all of her claims against the defendants in the arbitration (collectively, "the judgment debtors") and awarded her over $30 million in damages. On April 6, 2011, the Nueces County court confirmed the arbitration panel's award and entered judgment in favor of Shor ("the Nueces County judgment"). Black and the other judgment debtors, none of whom are parties to this suit, appealed to the Corpus Christi Court of Appeals, but they did not file a supersedeas bond or otherwise supersede execution on that judgment.[1]

On August 11, 2011, Shor obtained a turnover order from the Nueces County Court which stated that the judgment debtors were the owners of "shares/stock/stock certificates/ownership interests" in twenty-three entities related to Paul Black. The turnover order required Black and certain other of the judgment debtors from the arbitration to turn over for levy to the sheriff in Corpus Christi "all documents and records related to" the "shares/stock/stock certificates/ownership interests" in the twenty-three entities and "all real and personal property located at 500 N. Water Street, Corpus Christi." The order decreed that "Toby Shor, as Trustee for the Seashore Investments Management Trust, is owner of any and all of judgment debtors' interests in the entities listed . . . above and all real and personal property located at 500 N. Water Street, Corpus Christi." The headquarters of both the judgment debtors and the applicants

---

[1] This appeal remains pending before the Corpus Christi Court of Appeals in appellate cause number 13-11-00715-CV.

are located at 500 N. Water Street. Pursuant to this turnover order, Shor changed the locks on the offices of the entities related to Paul Black that have their headquarters at 500 N. Water Street, and she took possession of the business records and files of the applicants—none of which were named in the turnover order and none of which have been shown to be owned by a judgment debtor or subject to execution.

On October 4, 2011, Pelican filed an original petition in this case in the 12th District Court of Grimes County ("the Grimes County suit") seeking a declaratory judgment that the applicants are, in fact, not owned by a judgment debtor but by a spendthrift trust, the Paul Patrick Black Heritage Trust ("the Trust"), which is also an applicant, and are not subject to execution to satisfy the debts of the judgment debtors. With its petition, Pelican filed an application for a temporary restraining order, a temporary injunction, and a permanent injunction, seeking to enjoin Shor from seizing any assets of any of the applicants until a legal determination is made in the underlying declaratory judgment action as to whether the assets of the applicants are subject to execution to satisfy the judgment debt Shor is attempting to enforce.

In this suit, Pelican alleged that, in an attempt to collect on the Nueces County judgment, Shor had filed an application for a turnover order seeking applicants' interests in real property, including oil and gas leases, located in

4

Grimes County. Pelican alleged that none of the applicants were parties to the Nueces County judgment, and, therefore, Shor could not use their assets to satisfy that judgment. Pelican alleged that, although Paul Black, one of the judgment debtors in the Nueces County suit, was the sole beneficiary of the Trust, Black does not own an interest in any of the parties to this suit, which are all ultimately wholly owned by the Trust, or in any of the assets sought by Shor in her application for turnover relief.

Pelican sought a declaration (1) holding that the applicants are not liable for the debts of Paul Black, (2) holding that they are not liable to Shor "for any monies or debts," (3) quieting and resolving title to and ownership of the applicants in favor of the Trust, and (4) quieting and resolving title to and ownership of the applicants' properties, leases, and mineral interests in Grimes County. Pelican also requested that the trial court prevent Shor from "filing liens, interfering in the business relations of the [applicants], or taking any other action including seeking turnover relief in any court . . . concerning [applicants] and the [applicants'] mineral interest and oil and gas properties."

Pelican alleged that it was probable that it would prevail at a trial on the merits because the Nueces County judgment debtor, Paul Black, had no interest in either the applicants or in their Grimes County properties. It also alleged that harm was imminent because Shor had "expressly avowed that [she] will seek the

5

turnover of the [applicants] and their assets, which will damage and cloud the title of [applicants'] oil and gas properties situated in Grimes County." And it alleged that the harm was irreparable because Shor's actions would slander the applicants' title to their mineral interests, would interrupt and interfere with the operation of oil and gas wells, and would make it impossible for the applicants to obtain financing for future drilling operations while the cloud remains on their title. Pelican argued that it had no adequate remedy at law because "the damages from loss of a lease position may be incalculable" and the "real property and mineral estate is unique and cannot be reasonably replaced if lost."

The Grimes County trial court granted an ex parte temporary restraining order ("TRO") on the same day that Pelican filed its application and original petition. The order prohibited Shor from: (1) seeking turnover relief or proceeding with other collection efforts pertaining to the applicants; (2) seeking turnover relief or proceeding with other collection efforts pertaining to the applicants' assets; (3) contacting or interfering in the contracts and business relations of the applicants; (4) taking any other action or instituting any legal action which may slander or cloud title to the "Pelican Oil and Gas Ltd. Wolk lease and/or the Walkoviak Gas Unit and Walkoviak No. 1 well"; and (5) taking any other action or instituting any legal action related to attempts to collect or recover from the applicants any oil and gas interests, leases, real property, or proceeds

6

from production on land located in Grimes County. Ten days later, on October 14, 2011, the trial court extended and modified the TRO to prohibit Shor from "retaining, possessing, copying, reviewing or otherwise using in any manner the property, files, records, documents, and data" of the applicants.

On October 24, 2011, the trial court heard Pelican's application for a temporary injunction against Shor. At the beginning of the hearing, Shor argued that the Grimes County court lacked jurisdiction over the case pursuant to Civil Practice and Remedies Code section 65.023(b). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.023(b) (Vernon 2008). Shor argued that an injunction relating to execution on a judgment has to be heard in the court in which the judgment was originally rendered. Therefore, because the judgment upon which she was attempting to execute was rendered in Nueces County, only the Nueces County court had jurisdiction to grant an injunction restraining her from executing on the judgment, if appropriate. The trial court took the jurisdictional issue under advisement, and it heard testimony concerning the propriety of granting the temporary injunction.

At the hearing, James Black, Paul Black's brother, testified that he—not Paul—is the trustee of the Trust. James also testified that the Trust is a spendthrift trust, created by the brothers' parents for the benefit of Paul, and that it has never had a judgment entered against it. James testified that the Trust is the sole owner

7

of the other applicants and that no judgments have been entered against any of these entities. He further testified that Paul Black has never owned any interest in any of the applicants, and no court has ever determined that the applicants are the alter ego of Paul Black or that Black used the applicants to defraud his creditors.

James testified that Shor had already pursued a garnishment proceeding in Live Oak County and obtained a writ of garnishment addressed to Mego Resources, LLC, garnishing any property or interests owned by SGW Interests and held by Mego. James also testified that he is the property manager for the building located at 500 N. Water Street in Corpus Christi. He stated that after Shor obtained her turnover order in Nueces County, she changed the locks on the offices of the entities at 500 N. Water Street related to Paul Black, and she then took possession of the applicants' records and files located in the building. He testified that, after reading Shor's affidavit attached to the Live Oak County garnishment proceeding, it appeared to him that Shor had been reading SGW Interests' records.[2] James stated that it was "extremely important" that he regain access to these records because he needed them to file franchise and federal income tax returns for the

---

[2] Shor states, in her affidavit, "I have reason to believe and do believe that [Mego Resources] has property belonging to, or is indebted to, Defendant Paul Black, through SGW Interests, LLC. This belief is based on the fact that I have seen documents which show that Paul Black is the owner of SGW Interests, LLC, and that SGW Interests LLC owns an interest in oil and gas wells/leases in Grimes County, Texas."

applicants. James also stated that the records and files contain communications protected by the attorney-client privilege.

On cross-examination, James acknowledged that he took over the trustee position from Paul around the time of the Nueces County judgment. James agreed with Shor's counsel that Paul "is the one [who] actually controls where the money goes and what assets are purchased and the business dealings with the trust." He further agreed that Paul is the one who is "involved in the oil and gas deals on behalf of the trust or any of the trust inventory on a day-to-day basis."

Shor's attorney also testified at the temporary injunction hearing. He testified that he believed the TRO that was in effect was void, and, thus, he argued that he could "continue doing the things in violation of the letter of the order," such as filing writs of garnishment, and not be in contempt because the TRO is not enforceable. He also testified, however, that he would not take such action in violation of the TRO or any other injunctive relief "as an officer of the Court." Pelican's counsel asked whether he would agree to return the records and files of the Trust, SGW Interests, and the other applicants, and Shor's attorney responded that he would not. He stated that he believed, pursuant to the Nueces County turnover order, that Shor owns all personal property located at 500 N. Water Street that was "related to Paul Black entities."

9

Ultimately, the Grimes County court granted the temporary injunction. The court found that Pelican had provided sufficient evidence that the applicants are not judgment debtors of and do not owe any money to Shor; that Paul Black has never owned any of the applicants or any of their assets; that Shor presented no evidence to support an assertion that Paul Black transferred assets to the applicants or used these entities to defraud Shor; that the applicants own real and personal property in Grimes County, including oil and gas leases that run the risk of expiring; that Shor has threatened to or has actually clouded the title of the applicants' property; that Shor's collection attempts have resulted in the withholding of funds to the applicants; and that the applicants are likely to suffer permanent and irreplaceable loss of real and personal property without a temporary injunction pending a determination of the parties' rights. The court then ordered Shor to refrain from participating in the same acts that were prohibited in the two previous TROs.

The temporary injunction ordered Shor to return all property, files, records, documents, and data of the applicants and prohibited Shor from retaining this information or copies of this information. The order also required Shor to take all necessary actions to dismiss the Live Oak County garnishment proceeding and to dissolve the writ of garnishment addressed to Mego Resources that had already issued in that proceeding. The temporary injunction order also included language

stating that it should not be construed as prohibiting Shor from attempting to satisfy the Nueces County judgment from the assets of Paul Black or any of the named judgment debtors in that suit.

This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(4) (Vernon Supp. 2012) (allowing interlocutory appeal from order of district court that grants temporary injunction).

## Subject Matter Jurisdiction

In her first issue, Shor contends that the Grimes County court lacked subject matter jurisdiction to enter Pelican's requested temporary injunctive relief pursuant to Civil Practice and Remedies Code section 65.023(b).

Civil Practice and Remedies Code section 65.013 permits a suit for an injunction to stay execution on a judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 65.013 (Vernon 2008); *Butron v. Cantu*, 960 S.W.2d 91, 94 (Tex. App.—Corpus Christi 1997, no pet.); *McVeigh v. Lerner*, 849 S.W.2d 911, 914 (Tex. App.—Houston [1st Dist.] 1993, writ denied). Section 65.023(b) provides, however, that "[a] writ of injunction granted to stay . . . execution on a judgment must be tried in the court in which . . . the judgment was rendered." TEX. CIV. PRAC. & REM. CODE ANN. § 65.023(b). We have previously held that this section "is intended to ensure that comity prevails among the various trial courts of Texas" because "[o]rderly procedure and proper respect for the courts will require

11

that . . . attacks upon their judgment should be made in the court rendering such judgment, rather than in other courts indiscriminately." *McVeigh*, 849 S.W.2d at 914 (quoting *Lloyds Alliance v. Cook*, 290 S.W.2d 716, 718 (Tex. Civ. App.—Waco 1956, no writ)). We further held that not only does section 65.023(b) control venue in a suit for an injunction seeking to stay execution on a judgment, it also controls "jurisdiction as well, so long as the judgment in question is valid on its face." *Id.* (citing *Int'l Sec. Life Ins. Co. v. Riley*, 467 S.W.2d 213, 214 (Tex. Civ. App.—Amarillo 1971, writ ref'd n.r.e.)); *see also Butron*, 960 S.W.2d at 94 ("This requirement that an action to enjoin execution on a judgment must be brought in the court in which the judgment was rendered is jurisdictional, and does not relate merely to venue."). The requirement of facial validity is a requirement that the underlying judgment is not void. *Butron*, 960 S.W.2d at 95; *McVeigh*, 849 S.W.2d at 914.

In *McVeigh*, the 61st District Court of Harris County rendered a judgment in favor of McVeigh, and after Lerner, the judgment debtor, failed to satisfy the judgment, a writ of execution issued. 849 S.W.2d at 912–13. Lerner then filed an action in the 151st District Court of Harris County, seeking an injunction prohibiting the distribution of funds that Lerner had paid under protest and a declaration of the amount that she owed. *Id.* at 913. The 151st District Court granted a temporary restraining order and, subsequently, summary judgment in

12

favor of Lerner. *Id.* On appeal, McVeigh argued that the summary judgment was "outside the scope of the 151st District Court's jurisdictional authority under [section] 65.023." *Id.* In determining whether the 151st District Court had jurisdiction to enter the injunction, we held that the fact that Lerner's suit was not, on its face, a claim for an injunction to stay execution on the original judgment but was, instead, a claim to enjoin the distribution of funds paid under protest to prevent execution was an "immaterial" distinction. *Id.* at 915. We held:

> We construe section 65.023 to preclude a court from interfering in the execution of a judgment rendered by a sister court of this state . . . . We conclude section 65.023 barred the bringing of a claim for injunctive relief to stay execution of the 1987 legal malpractice judgment in any court but the 61st District Court of Harris County.

*Id.* We therefore concluded that section 65.023 deprived the 151st District Court of "subject matter jurisdiction on Lerner's claim for injunctive relief" because that court did not render the underlying judgment. *Id.*; *see also Butron*, 960 S.W.2d at 95 ("In the instant case, the 138th District Court rendered the $1,019,840.53 judgment against Mark Cantu. . . . Accordingly, Cantu had to bring his application for writ of injunction in the 138th District Court because that court had rendered the judgment. No other court had jurisdiction over that issue.").

Shor contends that, under the rationale of *McVeigh*, the Grimes County court lacks jurisdiction over Pelican's application for temporary injunction because the original Nueces County judgment was not void. As a result, pursuant to section

13

65.023(b), only the Nueces County court has jurisdiction to enter an injunction restraining Shor from executing on that judgment.

Pelican, however, cites the San Antonio Court of Appeals' decision in *Zuniga v. Wooster Ladder Co.*, 119 S.W.3d 856 (Tex. App.—San Antonio 2003, no pet.), for the proposition that section 65.023(b) does not apply to cases in which a stranger to the underlying judgment seeks injunctive relief from execution on that judgment. In *Zuniga*, Wooster assigned a legal malpractice cause of action to the Zunigas and the parties also entered into a consent agreement in the 73rd District Court which provided that (1) Wooster could transfer all of its assets, except the legal malpractice cause of action, to a new corporation, (2) the Zunigas waived all rights to the new corporation's assets, (3) the Zunigas released all claims against Wooster, and (4) Wooster's transfer of assets was not fraudulent. *See id.* at 859–60. Ten years later, the Zunigas sued the new corporation and threatened to execute on the consent judgment against the assets of the new corporation. *Id.* at 860. In the 224th District Court, Wooster sought a declaration that it was the only judgment debtor under the original consent judgment and applied for a temporary injunction to "prevent the Zuniga children from executing on the judgment against any entity other than Wooster." *Id.* The 224th District Court granted the requested injunctive relief. *Id.*

14

In addressing whether the 224th District Court had jurisdiction to grant the requested injunctive relief, the San Antonio Court of Appeals noted that, in most circumstances, "a suit to enjoin enforcement of a judgment must be brought in the court which rendered the judgment." *Id.* at 861. However, it then held that "this jurisdictional limitation only applies to a suit 'attacking the judgment, questioning its validity, or presenting defenses properly connected with the suit in which it was rendered, and which should have been adjudication therein.'" *Id.* (quoting *Kruegel v. Rawlins*, 121 S.W. 216, 217 (Tex. Civ. App.—Dallas 1909, writ ref'd)). The court observed that Wooster was not attempting to attack the underlying judgment, question its validity, or present defenses that it should have raised in the previous suit; instead, it was "attempting to prevent the misuse of the judgment—its execution against a stranger to the judgment." *Id.* According to the San Antonio court, "The jurisdictional limitation of section 65.023 does not require a claim seeking to prevent the misuse of a judgment to be brought in the court that rendered judgment." *Id.* (citing *Kruegel*, 121 S.W. at 217 (injunction to prevent stranger from enforcing judgment is not required to be filed in original court rendering judgment)). The court held that the 224th District Court had jurisdiction to issue the temporary injunction. *Id.*

The Corpus Christi Court of Appeals reached a similar result in *Williams v. Murray*, 783 S.W.2d 233 (Tex. App.—Corpus Christi 1989, no writ). In *Williams*,

15

the 134th District Court of Dallas County entered a judgment in favor of First City Bank of Dallas, which subsequently assigned that judgment to Williams. 783 S.W.2d at 234. Williams then obtained a writ of execution on some real property owned by one of the judgment debtors in Cameron County. *Id.* Janie Hughston, who was another judgment creditor of the defendant on whose property Williams sought execution but was not a party to the Dallas County judgment, filed suit against Williams in Cameron County, seeking an order restraining Williams from executing on the property and a determination that the assignment of the judgment to Williams was void. *Id.* The trial court granted the order, and Williams sought mandamus relief.

In determining whether Hughston had to bring her suit against Williams in Dallas County, where the underlying judgment was rendered, the Corpus Christi Court of Appeals noted that "[t]he object of § 65.023 is to protect the judgment and processes of one court from interference by another court." *Id.* (citing *Carey v. Looney*, 251 S.W. 1040, 1041 (Tex. Comm'n App. 1923)). The court noted that, one hundred years previously, the Texas Supreme Court had held that the predecessor statute to section 65.023 was "inapplicable to suits by non-parties to a judgment who seek to enjoin execution upon property in which they have an interest." *Id.* at 235 (citing *Van Ratcliff v. Call*, 10 S.W. 578, 579 (Tex. 1889)). The court reasoned that Hughston was not seeking to set aside the underlying

16

judgment or seeking to set aside an execution on the judgment; instead, she requested a stay of execution on the judgment until the rights of the parties with regard to the property could be determined in her declaratory judgment action. *Id.* The court ultimately concluded that section 65.023 was not applicable because Hughston was a stranger to the underlying Dallas County judgment. *Id.* In the Cameron County suit, the trial court "was not attempting to interfere with the Dallas court's judgment. Rather, the granting of the temporary restraining order was merely a way of preserving the status quo until a determination of the parties' rights could be made." *Id.* The Corpus Christi court held that the Cameron County court had jurisdiction to determine Hughston's declaratory judgment action. *Id.*

Shor argues that the cases that rely upon *Van Ratcliff v. Call* are not controlling because the predecessor statute to section 65.023, article 4656, was a mandatory venue statute and not a jurisdictional statute. *See* 10 S.W. at 578–79. In support, Shor cites two cases referring to article 4656 as a venue provision. *See Williams*, 783 S.W.2d at 235; *Flewellen v. Brownfield State Bank & Trust Co.*, 517 S.W.2d 384, 388 (Tex. Civ. App.—Amarillo 1974, no writ). Shor ignores the fact, however, that article 4656 was entitled "[j]urisdiction for trial" and provided that "[w]rits of injunction granted to stay proceedings in a suit, or execution on a judgment, shall be returnable to and tried in the court where such suit is pending, or such judgment was rendered . . . ." Act to Regulate Proceedings in District

17

Courts, 1st Leg., R.S., § 152, 1838–46 Laws of Tex. 1669, 1711–12, *repealed by* Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 9(1), 1985 Tex. Gen. Laws 3242, 3294. Section 65.023(b) is almost identical: "A writ of injunction granted to stay proceedings in a suit or execution on a judgment must be tried in the court in which the suit is pending or the judgment was rendered." TEX. CIV. PRAC. & REM. CODE ANN. § 65.023(b) (Vernon 2008). In analyzing section 65.023(b) in *McVeigh*, we noted that it "controls not just venue of such a suit, but also jurisdiction . . . ." 849 S.W.2d at 914. Thus, although article 4656 was primarily considered a mandatory venue provision, it also controlled jurisdiction. As such, *Van Ratcliff* and the cases that rely upon it are applicable. In *Van Ratcliff*, the Texas Supreme Court explicitly held that article 4656

> has no application to parties who do not sue to stay or enjoin the execution previously of the judgment as contemplated by the statute, but who sue to prevent the sale of property alleged to belong to them, under a judgment, however valid and regular it may be, to which they are not parties, and for the satisfaction of which their property could in no event be subject.

10 S.W. at 579.

We agree with Pelican that *Butron* and *McVeigh*—in which the courts of appeals held that the suits seeking injunctive relief from execution on a judgment had to be filed in the same courts in which the underlying judgments were originally rendered—are distinguishable from the present case. In both *Butron* and *McVeigh*, the party seeking an injunction to restrain execution on the underlying

18

judgment was the original judgment debtor. *See Butron*, 960 S.W.2d at 93; *McVeigh*, 849 S.W.2d at 913. Here, in contrast, none of the applicants were parties to the original Nueces County judgment and none have been determined to be owned by a judgment debtor. The allegation in the underlying suit is that none of the applicants are owned by a judgment debtor.

In its Grimes County suit, Pelican does not attack the merits of the Nueces County judgment, it does not question the validity of that judgment, and it does not present defenses to that judgment that should have been adjudicated in the underlying suit. *See Zuniga*, 119 S.W.3d at 861 (noting that section 65.023 applies to suits "attacking the judgment, questioning its validity, or presenting defenses" to judgment arising from original court). Instead, Pelican seeks declarations that the entities are not liable for the debts of Paul Black, the original judgment debtor, that they are not liable to Shor for any debts, and that Black has no ownership interest in the entities or in the Grimes County assets owned by the Trust. Pelican's application for a temporary injunction seeks only to preserve the status quo by preventing the garnishment and turnover of its Grimes County assets until the trial court can determine the proper ownership of the assets. The trial court's temporary injunction order also does not interfere with Shor's ability to execute on the assets of Paul Black and the other judgment debtors to satisfy the Nueces County judgment; the order includes language stating that it should not be construed as

19

prohibiting Shor from collecting from the assets of Black or the other named debtors.

We follow *Williams* and *Zuniga* and hold that section 65.023(b) does not apply to situations in which a non-party to the underlying judgment seeks to prevent execution on that judgment from its assets. *See Zuniga*, 119 S.W.3d at 861; *Williams*, 783 S.W.2d at 235; *see also Van Ratcliff*, 10 S.W. at 579 (holding that predecessor to section 65.023(b) "has no application" to non-party who seeks to prevent execution on judgment). We therefore conclude that section 65.023(b) does not require Pelican and the other applicants, who are not parties to the original Nueces County judgment, to bring their declaratory judgment action and applications for injunctive relief in Nueces County.

Shor argues that the applicants are not "strangers" to the judgment because, as James Black testified at the temporary injunction hearing, Paul Black actually controls the business dealings of the Trust, including determining which assets the Trust purchases, and is the one involved with the "day-to-day" oil and gas deals of the Trust. Shor further points out that two of the applicants—Pelican Oil & Gas Management, LLC and Pelican Oil & Gas, LP—were created after the arbitration panel awarded over $30 million to Shor from Black and other entities that he owns. At the hearing, however, Pelican presented evidence that the Trust, and not Paul Black, ultimately owns the applicants and that the Grimes County assets at issue

are owned by the Trust. Although Paul Black is the beneficiary of the Trust, the Trust is a spendthrift trust, and spendthrift trusts "protect the beneficiary's interest in the trust corpus and income from claims of a beneficiary's creditors while the corpus and income remain in the trust and are held by the trustee." *Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 948 S.W.2d 317, 321 (Tex. App.—Dallas 1997, writ denied). Spendthrift trusts are "exempt from attachment, execution, garnishment, or other seizure." *Id.* at 322. Furthermore, Shor presented no evidence that Black transferred assets to the Trust in an attempt to defraud her and protect his assets from execution on the Nueces County judgment, and no court has yet determined that the applicants are alter egos of Paul Black. Thus, the "status quo," pending resolution of the underlying Grimes County declaratory judgment action, is that the Trust and the other applicant entities are separate from Paul Black, and his involvement with the management of these entities does not compel the conclusion that he owns an interest in the assets of these entities.

We hold that the Grimes County trial court properly exercised subject matter jurisdiction over Pelican's application for a temporary injunction.

We overrule Shor's first issue.

**Propriety of Temporary Injunction**

In her second issue, Shor contends that, if the trial court had subject matter jurisdiction, the court abused its discretion in granting injunctive relief in favor of

21

Pelican because the evidence in the record does not support the court's conclusions that Pelican has a probable right of recovery or that Pelican will suffer imminent harm and irreparable injury without a temporary injunction.

The purpose of a temporary injunction is to preserve the status quo of the subject matter of the litigation pending a trial on the merits. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002); *see also In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004) (defining "status quo" as "the last, actual, peaceable, non-contested status which preceded the pending controversy"). A temporary injunction is an extraordinary remedy and does not issue as a matter of right; therefore, an applicant must plead and prove three specific elements to obtain a temporary injunction: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim time period. *Butnaru*, 84 S.W.3d at 204 (citing *Walling v. Metcalfe*, 863 S.W.2d 56, 57 (Tex. 1993)).

Because the decision to grant or deny a temporary injunction falls within the trial court's sound discretion, we will reverse an order granting injunctive relief only if the trial court abused that discretion. *Id.* We must not substitute our judgment for that of the trial court unless the court's action "was so arbitrary that it exceeded the bounds of reasonable discretion." *Id.* The trial court does not abuse its discretion by making a decision based on conflicting evidence, but it does abuse

22

its discretion when the evidence does not reasonably support the court's determination of the existence of probable injury. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 916 (Tex. App.—Dallas 2006, no pet.); *Tri-Star Petroleum Co. v. Tipperary Corp.*, 101 S.W.3d 583, 587 (Tex. App.—El Paso 2003, pet. denied). We review the evidence submitted to the trial court in the light most favorable to the trial court's ruling, draw all legitimate inferences from the evidence, and defer to the trial court's resolution of conflicting evidence. *INEOS Grp. Ltd. v. Chevron Phillips Chem. Co.*, 312 S.W.3d 843, 848 (Tex. App.—Houston [1st Dist.] 2009, no pet.). Our review is limited to determining whether the trial court abused its discretion in its ruling on the application for a temporary injunction; we do not reach the merits of the underlying case. *Sonwalkar v. St. Luke's Sugar Land P'ship, L.L.P.*, No. 01-11-00473-CV, 2012 WL 3525384, at *5 (Tex. App.—Houston [1st Dist.] Aug. 16, 2012, no pet.); *INEOS Grp.*, 312 S.W.3d at 848 ("On appeal, the scope of review is limited to the validity of the temporary injunction order. We do not review the merits of the underlying case.").

Shor contends that the evidence presented at the temporary injunction hearing does not support the second and third elements necessary to obtain a temporary injunction: a probable right to the relief sought and a probable, imminent, and irreparable injury in the interim time period. She does not challenge the first element—whether Pelican has asserted a cause of action against her.

23

### A. *Probable Right to Relief Sought*

With regard to the second element, a probable right to the relief sought, the applicant is not required to prove, at this stage, that it will prevail on final trial; instead, the only question before the trial court is whether the applicant is entitled to preservation of the status quo pending trial. *Sonwalkar*, 2012 WL 3525384, at *5 (citing *Walling*, 863 S.W.2d at 58); *INEOS Grp.*, 312 S.W.3d at 848 ("The sole issue presented to a trial court at a temporary injunction hearing is whether the applicant may preserve the status quo pending trial on the merits."). The applicant must, at the very least, present some evidence that, under the applicable rules of law, tends to support its cause of action. *INEOS Grp.*, 312 S.W.3d at 848; *Tanguy v. Laux*, 259 S.W.3d 851, 857 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ("A probable right to the relief sought is shown by alleging a cause of action and presenting evidence that tends to sustain it.").

At the temporary injunction hearing, James Black testified that Paul Black does not have an ownership interest in any of the applicants and that he does not have an ownership interest in any of the applicants' Grimes County properties. As further supporting evidence, Pelican presented the Nueces County judgment incorporating the earlier arbitration award, the trust declaration for the Trust reflecting that Paul Black is the sole beneficiary of this spendthrift trust, and the formation documents for each of the other applicant-entities. All of these

formation documents indicate that the Trust or an entity wholly-owned by the Trust is the sole owner of each of the entities and that Paul Black does not have an ownership interest in the entities. James further testified that the Grimes County oil and gas leases and other mineral interests are all Trust assets and are not owned by Paul Black. He also testified that none of the applicants have been involved in litigation with Shor, and Shor does not have a judgment against any of these entities. This is some evidence, therefore, that Black does not have an ownership interest in any of the applicants or their assets, and, therefore, that the applicants are not parties to the Nueces County judgment and their assets are not susceptible to execution on that judgment. *See INEOS Grp.*, 312 S.W.3d at 848 (holding that, to establish probable right of recovery, applicant must present at least some evidence that tends to support its cause of action); *see also Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 897 (Tex. App.— Houston [1st Dist.] 2011, no pet.) ("The evidence must be sufficient to raise a bona fide issue as to [the applicant's] right to ultimate relief.").

Shor contends that the evidence does not support the trial court's conclusion that Pelican established a probable right of recovery because the evidence reflects that Paul Black "actually controls" the business dealings of the Trust, including determining which assets are purchased by the Trust, that he is involved on a "day-to-day" basis with the Trust's oil and gas deals, and that two of the entities—

25

Pelican Oil & Gas Management, LLC, and Pelican Oil & Gas, LP—were formed after the arbitration panel rendered an award against Black in favor of Shor, suggesting that the entities were formed to fraudulently transfer Black's assets to avoid execution on the Nueces County judgment, entered several months later. Shor has, however, presented no evidence of specific assets that Black transferred to the Pelican entities or to the Trust after either the arbitration award or the Nueces County judgment was entered against him. Moreover, in a case of conflicting evidence, such as this one, when reviewing the trial court's decision to grant injunctive relief, we view the evidence in the light most favorable to the trial court's ruling and defer to the trial court's resolution of conflicting evidence. *See INEOS Grp.*, 312 S.W.3d at 848. The trial court does not abuse its discretion when some evidence reasonably supports its decision. *Butnaru*, 84 S.W.3d at 211; *Sharma v. Vinmar Int'l, Ltd.*, 231 S.W.3d 405, 419 (Tex. App.—Houston [14th Dist.] 2007, no pet.).

We therefore conclude that Pelican presented some evidence supporting its probable right to recovery on the merits of its claims against Shor.

### B. *Probable, Imminent, and Irreparable Injury*

"Probable injury" includes the elements of imminent harm, irreparable injury, and no adequate remedy at law. *El Tacaso, Inc. v. Jireh Star, Inc.*, 356 S.W.3d 740, 743 (Tex. App.—Dallas 2011, no pet.); *Khaledi v. H.K. Global*

26

*Trading, Ltd.*, 126 S.W.3d 273, 283 (Tex. App.—San Antonio 2003, no pet.) ("Probable injury in the interim is established by tendering evidence of imminent harm, irreparable injury, and inadequate legal remedy."). An injury is irreparable if the injured party cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard. *Butnaru*, 84 S.W.3d at 204; *Sharma*, 231 S.W.3d at 427 ("That is, the applicant has to establish there is no adequate remedy at law for damages. An adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief."). Generally, money damages may be inadequate to compensate an injured party for the loss of property deemed to be legally "unique" or irreplaceable. *Sonwalkar*, 2012 WL 3525384, at *12 (quoting *N. Cypress Med. Ctr. Operating Co. v. St. Laurent*, 296 S.W.3d 171, 175 (Tex. App.—Houston [14th Dist.] 2009, no pet.)). A trial court may grant equitable relief when a dispute involves real property. *Butnaru*, 84 S.W.3d at 211. A trial court may also grant injunctive relief when the enjoined conduct threatens to disrupt an ongoing business. *See Sonwalkar*, 2012 WL 3525384, at *12; *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied) ("Disruption to a business can be irreparable harm."). A temporary injunction may not, however, be granted solely upon the mere speculation of

injury, based only on fear or apprehension. *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 861 (Tex. App.—Fort Worth 2003, no pet.).

At the temporary injunction hearing, Shor's counsel testified that, before he received notice of the temporary restraining order that the trial court entered on October 4, 2011, he filed an application for a writ of garnishment in Live Oak County, seeking to garnish any interest that applicant SGW Interests, LLC, has in oil and gas leases in that county. James Black testified that, pursuant to the Live Oak County writ of garnishment, Mego Resources, the garnishee, withheld a "substantial amount of money" based on royalty payments owed to SGW Interests and refused to make these payments until the resolution of this dispute. Prior to the filing of Pelican's original petition and application for injunctive relief, Shor sought turnover relief in Nueces County. Shor also obtained a court order giving her title to property at 500 N. Water Street in Corpus Christi, which is where the headquarters of all of the Pelican entities are located. Shor took possession of the records of all of the entities, and her counsel refused to return their files, books, and records. James testified that it is "extremely important" for him to retrieve these records because he needs them for, among other things, filing franchise tax returns and federal tax returns. He also stated that the records contain information covered by the attorney-client privilege. Thus, Shor had already sought execution

on the applicants' assets before the applicants sought injunctive relief prohibiting this conduct.

James also testified that the applicants own "valuable" oil and gas interests, including "some leases," in Grimes County. He agreed with the applicants' counsel that the Trust "stands to lose substantial real property rights if its title does not apply." He agreed that any liens that Shor placed on the applicants' property would "cause significant financial harm" to the Trust. James testified that if the Trust lost its income stream, he would not receive compensation as the trustee and the Trust would not be able to make distributions to Paul Black.[3]

James's testimony concerning Shor's writ of garnishment filed in Live Oak County commanding Mego Resources to withhold funds payable to SGW Interests and his testimony and the testimony of Shor's attorney concerning Shor's retention of the applicants' records and files, show that Shor has already pursued, and, in the absence of temporary injunctive relief pending trial on the merits of the underlying

---

[3] In the absence of an agreement by the parties, the affidavit of James Black, filed with Pelican's application for injunctive relief, does not constitute evidence supporting the issuance of the temporary injunction. *See Millwrights Local Union No. 2484 v. Rust Eng'g Co.*, 433 S.W.2d 683, 686 (Tex. 1968); *Ahmed v. Shimi Ventures, L.P.*, 99 S.W.3d 682, 684 n.2 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("[A]bsent the parties' agreement, affidavits attached to pleadings and not admitted into evidence do not constitute evidence."); *see also Pierce v. State*, 184 S.W.3d 303, 307 (Tex. App.—Dallas 2005, no pet.) ("We conclude a trial court may issue a temporary injunction based on affidavit testimony *admitted into evidence* at the hearing thereon.") (emphasis in original). James's affidavit was not entered into evidence during the temporary injunction hearing, and, therefore, we do not consider it when determining whether evidence supports the temporary injunction.

dispute, is likely to continue pursuing, attempts to satisfy her judgment against Paul Black from the assets of the applicants without a judicial determination that the applicants are, in fact, liable for Paul Black's debts, to their harm.

By withholding the documents and records of the applicants and funds owed to SGW Interests by Mego Resources, Shor is interfering with the business relations of the applicants. *See Sonwalkar*, 2012 WL 3525384, at \*12; *see also Frequent Flyer Depot, Inc.*, 281 S.W.3d at 228 (holding that disruption to business can be irreparable harm). James testified that allowing Shor to continue pursuing garnishment remedies or to place liens on the applicants' property would result in the Trust's losing "substantial property rights" and suffering "significant financial harm." Although Shor's attorney testified that he would not pursue collection methods while temporary injunctive relief is in place, there is every indication that, if she were not restrained by injunctive relief, Shor would continue to pursue garnishment and turnover relief seeking the applicants' assets, without a judicial determination that Paul Black fraudulently conveyed assets to the applicants or that the applicants are alter egos of Paul Black, which would permit execution against those assets. Under the status quo, which the applicants seek to preserve, the applicants' assets are ultimately owned by the Trust, a valid spendthrift trust whose assets are not subject to "attachment, execution, garnishment, or other seizure" by Paul Black's creditors. *See Burns*, 948 S.W.2d at 322. The applicants have

presented evidence that Shor has already disrupted the status quo by seeking execution on their assets and that she will likely continue to do so in the future, thus demonstrating probable injury in the absence of injunctive relief.

We conclude that the temporary injunction order is supported by evidence establishing probable injury to the applicants.

We overrule Shor's second issue.

## Conclusion

We lift the temporary stay of trial court proceedings entered on March 21, 2012, and affirm the order of the trial court granting a temporary injunction in favor of Pelican.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.